Delta Ins. & Realty Co. et al. v. Benjamin et al.

[84 South. 226. In Banc. No. 20960.]

Executors and administrators. *Debts excepted from exemption of proceeds of insurance should be paid out of other property.*

The debts excepted from the exemption created by section 2141, Code of 1906 (section 1814, Hemingway's Code), of the proceeds of an insurance policy payable to the executor or administrator of the insured from liability for the debts of the decedent, and which are preference claims under section 2113, Code of 1906 (section 1781, Hemingway's Code), should be paid by the administrator out of the proceeds of property of the decedent, other than the insurance policy, if it is sufficient therefor, although so to do will result in the other debts of the decedent's estate not being paid in full.

Appeal from the chanchery court of Leflore county.
Hon. Joe May, Chancellor.

Suit by Delta Insurance & Realty Company and another against C. M. Benjamin, Sr., and others. Demurrer to petition sustained, and petitioners appeal. Affirmed.

*Gwin, Mayes & Green,* for appellants.

Section 2141, of the Code does not provide a total exemption. Under that section the proceeds of the policy are still liable for the payment of all debts of the estate and for the payment of insurance premiums and expenses of last illness and burial. This has been directly held by this court in *Dobbs* v. *Chandler,* 84 Miss. 372, and that is the obvious meaning of the language of the statute.

The theory upon which the chancellor sustained the demurrer was that the proceeds of a policy under section 2141 of the Code descends direct to the heirs of the decedent, and do not constitute an asset of the estate,

or form any part of the estate to be administered by the personal representative.

Section 2141 of the Code is manifestly not a statute by whose words or operation the proceeds of a policy of insurance payable to the administrator is made to descend direct to the heirs of the decedent. It does not say that the proceeds of such a policy shall "descend" to the heirs; it says they shall "inure to the heirs or legatees of the decedent free from liability for the payment of the debts of the decedent."

It is true that section 1657 of the Code provides that "exempt" property shall descend direct to the heirs of the decedent; but the proceeds of a policy payable to the administrator, as we have just shown, are not exempt even under section 2141 of the Code.

Section 1657 of the Code can have no application to the proceeds of a policy under section 2141, for the very good reason that under that section the proceeds of the policy are liable for the payment of all debts of the estate, and also for certain debts of the decedent. Constituting a fund from which those debts may be paid, the proceeds of a policy cannot be "exempt" and are necessarily an asset of the estate.

It is in fact perfectly obvious from the words and structure of section 2141 that the legislature intended that the proceeds of such a policy should be collected by the administrator to whom it was payable, and should be used by him in the payment of all debts for which the proceeds are still liable thereunder. It was clearly not intended by that section to change the method of handling those funds or any other funds in the administration of estates. Both the words and sense of section 2141 are merely that the proceeds of such a policy, being handled in the usual way, shall not be used in the payment of the debts of the decedent, except those debts of the decedent therein named.

Any other view necessarily results in making the proceeds of the policy totally exempt which is to override the first and foremost thing the legislature set out to do; to grant a partial exemption.

The chancellor based his conclusion on the remarks of this court in the case of *Equitable Life Assurance Society* v. *Hartfield,* 87 Miss. 548, 40 So. 21. In that case this court did say that under section 2141 of the Code proceeds of the policy were "*prima-facie* exempt property" and "descends to the heirs, forming no part of the estate to be administered by the personal representative." But the application of those remarks to the question now being considered is a total misconception of their meaning. *Kitchins* vs *Harrall,* 54 Miss. 474.

Starting with the above stated misapprehension of the remarks of this court in *Equitable Life Assurance Society* v. *Hartfield,* the conclusion reached by the learned chancellor was that the proceeds of a policy under section 2141 of the Code constitute a sort of special fund which was liable only in the alternative, if at all; and since other funds of the estate were sufficient to pay all claims not within the exemption of section 2141 of the Code, the proceeds of the policy were properly turned over to the heirs.

This conclusion is not supported by any of our authorities and cannot be sustained without manifestly amending section 2141 of the Code, by construction.

Section 2141 of the Code does not say or intimate that the proceeds of such policies, though liable to the payment of claims) other than those against the decedent, shall be used only in the alternative, if the other funds of the estate are insufficient to pay them. The section does not deal with the method of payment at all, but solely with the matter of liability, that and that only. The Legislative attention was directed to nothing else. All else is left as it was before.

To make section 2141 say that the proceeds of the policy are to be used only in the alternative in the payment of claims for which they are liable, is manifestly to make the statute say something that was not intended and is not expressed. The statute does not deal with the order in which those funds shall be resorted to. It can no more be construed to mean that they shall be resorted to last, than it can be construed to mean that they shall be resorted to first, in the payment of the debts.

It is unnecessary to cite authorities to the effect that this court will not construe the statute so as to result in its amendment; and we respectfully insist that unless and until section 2141 of the Code is amended by the legislature, the proceeds of a policy not exceeding five thousand dollars, payable to the administrator, constitute an asset of the estate and should be made to bear their pro-rata part in the payment of all claims for which the proceeds of the policy are liable.

It is perfectly obvious that in this case the appellee is attempting to override or circumvent the expressed intention of the legislature; for he is trying to get away with the proceeds of the policy totally exempt from all liability, when the first and only intention of the legislature was to grant a partial exemption only.

We insist that the proceeds of this policy should not have been turned over to the heirs without being made to contribute to the payment of the claims against the estate for which the proceeds were liable, especially when the result was to render the estate insolvent.

*Whitington & Osborn,* for appellees.

For the purpose of this argument, we desire to discuss only one point raised by our demurrer which was sustained by the chancellor, and that is, whether or not appellants have any claim whatsoever on the proceeds of the life insurance policy for one thousand dollars, payable to the administrator. The court understands that

there was no insurance other than this thousand dollars payable either to the heirs or to the estate of the decedent.

Counsel's contention that section 2141 of the Code (Hem. Code, sec. 1814) was enacted for the benefit of creditors rather than for the exemptionists, bears the distinction of being novel if not sound. It is a well recognized rule of construction that all statutes relating to the same subject-matter are to be construed together. *White* v. *Johnson,* 23 Miss. 68; *Bank* v. *Archer,* 8 S. & M. 151; *Scott* v. *Searles,* 5 S. & M. 25. It is not necessary to cite authorities to sustain the proposition that a statute must be construed so as to effectuate the policy of the legislature manifested in passing it.

The statute under consideration has been amended several times by the legislature. This section is numbered 1965 in the Code of 1892, but under that code, no debts of the decedent and and no debts of the estate are excluded from its provision. It merely states that the proceeds of life insurance policies not exceeding five thousand dollars shall inure to the heirs or legatees freed from all liabilities for debts of the decedent.

In 1904, the case of *Dobbs* v. *Chandler,* appeared in this court and the opinion of the court will be found in 84 Miss. 372, 36 So. 388. In that case it affirmatively appeared that decedent at the time of his death had no property other·than a policy of life insurance for five hundred dollars payable to his administrator. The question was whether or not this five hundred dollars was liable for the payment of the expenses of administration and funeral expenses, and also claim for nurse hire. The court very properly held that the insurance money was liable for the payment of the expense of administration as well as the funeral expense, because not a debt of the decedent, but expressly held that the insurance money was not liable for the claim of the nurse for nurse hire because a debt of the decedent. The

legislature, recognizing that such funds should be liable
not only for the funeral expense and for the expense of
administration, but' for the expenses of last illness,
amended this section in adopting the Code of 1906 by
providing that such insurance money should also be liable
for the expense of last illness and for burial, and in addi-
tion to this premiums paid on the policy by any one other
than the insured.    Clearly, this amendment was made
to meet the decision of *Dobbs* v. *Chandler,* and if the
legislature had intended to enlarge the exception so as
to provide as contended by the appellants, that all ex-
penses of administration and other preferred claims
should be paid out of this fund, such provision would
unquestionably have been incorporated in this amend-
ment.    This section was again amended by the Laws of
1908, chapter 175, so as to increase the amount of ex-
emptions from three thousand to five thousand dollars.

Section 1657, of the Code (Hem. Code, sec. 1389) pro-
vides that all exempt personal property, as well as real
property, shall descend directly to the heirs at law, and
this section has been construed to mean that the exempt
personal property is no part of the estate to be admin-
istered, but descends directly under the statute.    *Whit-
ley* v. *Stevenson,* 38 Miss. 113; *Holliday* v. *Holland,* 41
Miss. 528; *Wally* v. *Wally,* 41 Miss. 657, and that this
rule obtains whether the estate be solvent or insolvent.
*Mason* v. *O'Brien et al.,* 42 Miss. 420.   •

Section 2113 of the Code (Hem. Code, sec. 1781)
makes the expenses of last illness, for the funeral and
for the administration, preferred claims and provides
that they shall be first paid out of any assets of the
estate.

Section 2118 of the Code, (Hem. Code, sec. 1786), pro-
vides that in making distribution of an insolvent estate,
the administrator shall first deduct the preference
claims.    It is the doctrine of all courts that exemptions
are highly favored by the law and that statutes granting

exemptions are construed liberally in favor of the exemptionist. *Laurel* v. *Turner,* 80 Miss. 530, 31 So. 965; *Bank of Gulfport* v. *O'Neal,* 86 Miss. 45, 38 So. 630; *Dreyfus* v. *Barton,* 98 Miss. 758, 54 So. 254.

Counsel has cited no authority in support of his contention, the burden of his argument being that the statute exempting five thousand dollars of life insurance payable to the executor or administrator, which provides that such sum shall not be exempt from the payment of premiums paid by someone else, or from funeral expenses and expenses of last illness, means that a special fund was created for the payment of debts coming within the exceptions mentioned, and indirectly for the payment of unsecured creditors.

As we understand counsel's argument it is that if Mr. Benjamin had left no estate other than the thousand dollars due under the life insurance policy, his creditors would not have been entitled to a cent, but that in a case where there is as much as ten dollars of assets other than the insurance money, this ten dollars must be used exclusively to the payment of unsecured or unpreferred claims and that no part of it can be used for the payment of debts coming within the exemptions named in the statute.

Taking into consideration the policy of the legislature, the construction uniformly placed by the court on exemption statutes, and the history of the statute under consideration, it does occur to us that counsel's contention is untenable and that the legislature only intended to make this insurance money subject to the payment of the expenses for last illness, funeral, administration and for premiums only in cases where there are no other assets with which to pay these claims.

Appellant admits that he has no direct claim to any part of the proceeds of this insurance policy, but he seeks to do indirectly that which he cannot do directly. Obviously, if all preferred claims must be paid out of

the insurance money, the statute redounds to the benefit of unsecured or unpreferred creditors of the decedent.

Appellant's construction of the statute would insure, in almost every case the payment in full of unsecured creditors. In the average case of administration, the largest expense and the greatest burden on the estate is the payment of preferred claims. In other words, these preferred claims usually total more than the claims of general creditors, and if the administrator is not permitted by law to pay any part of these preferred claims out of the general assets, where so to do would render the estate insolvent, unpreferred creditors would reap the full benefit of the insurance money to the exclusion of the heirs and thereby defeat the manifest purpose and intention of the legislature in creating the exemption.

Appellant's construction would put a premium on the estate which has no other assets than insurance money. His contention destroys the incentive of the average poor man to accumulate more than an interest in a small life insurance policy.

If, in the case at bar, decedent had left an estate of a thousand dollars in addition to this insurance policy for a thousand dollars, and the preferred claims including expense of administration had amounted to a thousand dollars, and the claims of general creditors had amounted to a thousand dollars, then the statute would mean nothing whatever to the heirs at law, for not only would the thousand dollars of general assets have been consumed by the general creditors, but the thousand dollars insurance money would have been consumed by preferred claims.

Where counsel gets his authority for assuming that the insurance money mentioned in the section of the code under consideration does not descend to the heirs or legatees, we do not know. We have just quoted the section of the code which provides that all exempt

property shall descend direct, and cited the decision of the court holding that such exempt property constitutes no part of the estate, and counsel quotes at length the case of *Assurance Society* v. *Hartfield,* 87 Miss. 548, wherein it is expressly held .that the proceeds of the policy descended to the heirs and formed no part of the estate to be administered.

In addition, this court, in the case of *Coates* v. *Worthy,* 72 Miss. 575, placed this section of the code in the same attitude so far as liberality of construction is concerned, with the preceding section with reference to insurance policies payable to an individual rather than.to the administrator or executor, and in the opinion on suggestion of error, page 579, the court in answer to the contention that the proceeds of the policy should be made liable for debts because the decedent left no heirs falling within the provision of section 1552 of the Code of 1892, held, that the section under consideration to-wit: the one creating an exemption as to life insurance payable to the administrator or executor, engrafted an exception on the general rule making exempt property liable in the case of wife or children, etc., and expressly held that the proceeds of such a policy inured to the heirs or legatees freed from all liabilities from the debts of the decedent.

Counsel for the appellant is obsessed with the idea that where the insurance policy is made payable to the administrator or executor, all preferred claims must be paid out of the proceeds. Our contention is that this fund should not be touched unless there are insufficient general assets to pay same. There are many reasons which impel a man to have his life insurance policy payable to his estate rather than to his wife or children. One reason is that this policy becomes valuable after a certain length of time and is not infrequently used by the insured in borrowing money from the insurance company or from some individual or bank. If the policy is

payable to a named beneficiary; of course the beneficiary has a vested interest in the policy and the policy cannot be used by the insured for the purpose of borrowing money without the written assent or waiver of the beneficiary. The legislature recognized this in enacting the section under consideration.

After the enactment of the statute, the average man desiring to provide as best he can for his loved ones and at the same time make such an investment as could be used by him in case of a contingency or emergency, but unable to carry more than five thousand dollars insurance, would necessarily prefer to have his policy made payable to his estate. In addition, every man desires to have his expenses for last illness and for his funeral paid, and under the provisions of the statute, this is assured him.

The statute has uniformly received liberal construction at the hands of this court. *Dreyfuss* v. *Barton,* 98 Miss. 758, 54 So. 254. In the last mentioned case, at page 769 of the case as reported in the Mississippi Reports the court said: "Persons insure frequently for the very purpose of building up an estate which cannot be taken for the purpose of paying their debts, and frequently these policies of insurance furnish the only protection to the family of the insured against poverty and want."

Counsel seems to lose sight of the fact that the general law in reference to the administration of estates charges the general assets with the payment of the preferred claims, when the statute directs that such claims shall be paid in full, if possible, to the exclusion of all claims of general creditors.

No logical reason can be advanced why exempt insurance money shall bear a greater burden than any other exempt property. The statute certainly creates an exemption and will be liberally construed and only in cases where there are not sufficient general assets to pay the

preferred claims will the law burden the insurance money with the payment of same.

We invoke the doctrine of expression *Unius est exclusio alterius.* Brown in his "Legal Maxims" says that no maxim of the law is of more general and uniform application and is never more applicable than in the construction and interpretation of statutes. To construe the statute to mean that the insurance money constitutes a fund for the purpose of paying preferred claims when there are general assets sufficient to pay same is to violate this fundamental maxim of the law.

The enactment of the law does not repeal or in any way change the provisions of the sections of the Code hereinabove mentioned requiring preferred claims to be first paid out of the general assets of an insolvent estate. In order to sustain appellant's contention, the court must engraft other exceptions upon the law as enacted by the legislature and this the court will not do.

We respectfully submit that there is no merit in the ingenious argument of counsel for the appellant and the case should be affirmed.

Smith, C. J., delivered the opinion of the court.

C. M. Benjamin, Jr., died intestate, leaving surviving him as his sole heirs at law, his father, C. M. Benjamin, Sr., to whom letters of administration on his estate were issued, and Mrs. R. B. Everett, a sister. The estate was found to be and was decreed insolvent. The decedent left a life insurance policy for one thousand dollars payable to his executor, administrator or assigns which was collected by the administrator, and, by order of the court made on the administrator's *ex parte* application, was by him paid over to himself and his daughter, Mrs. Everett under section 2141, Code of 1906 (section 1814, Hemingway's Code), which provides:

"The proceeds of a life insurance policy not exceeding five thousand dollars payable to the executor or administrator, of the insured, shall inure to the heirs or legatees, freed from all liability for the debts of the decedent, except premiums paid on the policy by any one other than the insured for debts due for expenses of last illness and for burial."

When the cause came on for a final decree adjudicating all claims against decedent's estate, and directing the distribution of the assets thereof, the appellants excepted to the order previously made by the court directing the administrator to pay the proceeds of the insurance policy to the heirs of the decedent and by agreement of counsel the questions thereby raised were reserved in the final decree for determination later on a petition to be there-after filed by the appellants for that purpose. Some time thereafter the appellants, the Delta Insurance & Realty Company and the Greenwood Savings Bank filed their petition, pursuant to the agreement of counsel, reciting the foregoing facts and alleging in detail the payment by the administrator out of the decedent's estate, other than the proceeds of the insurance policy, of the costs of the administration, taxes due by the estate, and the expense of the decedent's last illness and burial, amounting to one thousand fourteen dollars and sixty eight cents, these being preference claims under section 2113, Code of 1906 (section 1781, Hemingway's Code), resulting in the general creditors, among whom are the appellants, receiving less than was due them, the balance due to the Delta Insurance & Realty Agency being twenty three dollars and twelve cents, and to the Greenwood Savings Bank being one hundred eleven dollars and seventy one cents. The defendants to this petition are the administrator, the surety company in which his bond was executed, and Mrs. Everett.

A demurrer to the petition was sustained, and the petitioners appeal.

The two questions presented to us for decision as stated by counsel for the appellants are:

(a) Is the order of the lower court directing the administrator to pay over to the heirs of the decedent the proceeds of the policy for one thousand dollars *res adjudicata* in this proceeding by the appellants?

(b) Was it proper to wholly exclude the proceeds of the policy from the assets of the estate and turn the money over to the heirs of the decedent free from the payment of any and all claims?

Our answer to the second of these questions will render it unnecessary for us to consider the first.

Section 2141, Code of 1906 (section 1814, Hemingway's Code), does not expressly provide that the debts excepted from the exemption created by the statute, and which are preference claims under secton 2113, Code of 1906 section 1781, Hemingway's Code), shall be paid out of the decedent's state other than the proceeds of an insurance policy when so to do would result in the general creditors receiving less than is due them; neither does it provide that such expenses shall, in that event, be paid either in whole or in part out of the proceeds of the insurance policy, but the two manifest purposes of the statute are: First, to exclude all of the general creditors of a decedent from participating in the proceeds of a life insurance policy not exceeding five thousand dollars, payable to his executor or administrator, and to cause the proceeds of such a policy to inure to the benefit of the heirs or legatees of the insured in event he should die leaving debts, to the same extent that it would have inured to their benefit had he died leaving no debts other than those excepted from the exemption created by the statute; and, second, to insure the payment of the debts excepted from the exemption to the extent of the proceeds of the policy. Both of these purposes can be accomplished only by permitting the creditors of the classes excepted from the exemption to share in the proceeds of such an insurance

policy only when, and then only to the extent, necessary to enable them to collect their claims against the decedent's estate. To hold that the debts excepted from the exemption must be paid out of the proceeds of such a policy before the decedent's general estate can be resorted to for that purpose would practically destroy the statute; for it is of material benefit to the heirs of a decedent only when the decedent's estate, other than the proceeds of an insurance policy, is insufficient to pay all of the debts of the estate. If it is sufficient for that purpose, the amount distributed to the heirs will be the same whether the debts excepted from the exemption are paid out of the proceeds of the policy or out of the proceeds of other property.

*Affirmed.*